[No. 61176-9. En Banc. February 23, 1995.]

*In the Matter of the Marriage of* ROBERT T. SHORT, *Petitioner,* and PATRICIA A. SHORT, *Respondent.*

*Maltman, Reed, North, Ahrens & Malnati, P.S.,* by *Douglass A. North; Hollis Holman* and *Williams, Kastner & Gibbs,* for petitioner.

*William T. Lawrie* and *Andrea M. Gilbert* (of *Lawrie & Gilbert*), for respondent.

*Catherine W. Smith* on behalf of Family Law Section, Washington State Bar Association, amicus curiae for petitioner.

GUY, J. — We accepted review to determine whether the employee stock options furnished to Petitioner Robert Short by his employer, the Microsoft Corporation, are characterized as separate property or community property under RCW 26.16. The King County Superior Court found the stock options part separate property and part community property. The Court of Appeals reversed, finding the stock options entirely community property. We conclude the Microsoft stock options are part separate property and part community property. We reverse the Court of Appeals in part, affirm in part, and remand the case to the Superior Court.

BACKGROUND

Patricia and Robert Short (hereinafter referred to individually as Patricia and Robert) were married on July 15, 1978.

At the time of their marriage Robert worked for the Digital Corporation (Digital). In 1982, Digital transferred Robert from Massachusetts to Washington. By 1988, Robert supervised 57 employees and earned $80,000 a year in salary.

In September 1988, Digital canceled the project Robert was supervising and asked Robert to transfer back to Massachusetts. Not wishing to return to Massachusetts, Robert left Digital.

After leaving Digital, Robert made plans to establish a new computer technology company with several other former Digital employees. The chairman of the Microsoft Corporation (Microsoft) heard about the potential new computer company and arranged a meeting with several of the former Digital employees to discuss innovative computer systems and employment options at Microsoft. Robert, along with several other former Digital employees, abandoned the idea of a new computer company and accepted a job with Microsoft in November 1988.

As part of Robert's negotiated compensation package, he received a $90,000 annual salary and the right to purchase 25,000 shares of $.001 par value Microsoft common stock for $46 per share. Robert's stock options were granted pursuant to and are governed by the Amended and Restated Microsoft Corporation 1981 Stock Option Plan (Plan). Under the terms of the Plan, the option to purchase Microsoft stock lapses upon Robert's death, disability, or termination from employment.[1] The Plan states the stock options are intended to further the following Microsoft objectives:

> The purpose of this Plan is to encourage ownership of Common Stock of the Company by officers and key employees of the Company and any current or future subsidiary. *This Plan is intended to provide an incentive for maximum effort in the*

---

[1] The stock option contract given to Robert provides: "This is not an employment contract and while the benefits, if any, of this option are an incident of the Optionee's employment with the Company, the terms and conditions of such employment are otherwise wholly independent hereof." Clerk's Papers, at 254-55. The Plan provides further: "The granting of an option pursuant to this Plan shall not constitute any agreement or an understanding, express or implied, on the part of the Company or a subsidiary to employ the Optionee for any specified period." Clerk's Papers, at 263.

*successful operation of the Company and is expected to benefit the shareholders by enabling the Company to attract and retain personnel of the best available talent* through the opportunity to share, by the proprietary interests created by this Plan, in the increased value of the Company's shares to which such personnel have contributed.

(Italics ours.) Clerk's Papers, at 258. The Microsoft stock options vested over time. One-quarter of the stock options vested 18 months after Robert commenced employment at Microsoft, while the remaining three-quarters vested in equal increments every 6 months thereafter.

Patricia and Robert separated on January 18, 1989. In February 1990, Robert petitioned for dissolution of the marriage. Patricia and Robert have no children.

A stock split in April 1990 resulted in Robert's right to purchase 50,000 shares of $.001 par value Microsoft common stock for $23 per share. A schedule of stock option dates with number of shares available for purchase is as follows:

| Stock Option Date | Shares |
| --- | --- |
| 05/17/90 | 12,500 |
| 11/17/90 | 6,250 |
| 05/17/91 | 6,250 |
| 11/17/91 | 6,250 |
| 05/17/92 | 6,250 |
| 11/17/92 | 6,250 |
| 05/17/93 | 6,250 |

On or about May 17, 1990, Robert purchased at $23 per share 12,000 of the 12,500 available shares, leaving unexercised the right to purchase 500 additional shares. Robert sold 7,000 of the purchased shares on May 17, 1990, for $64.75 per share. Robert sold the remaining 5,000 purchased shares on May 22, 1990, for $71.50 per share. The before-tax profit on the transactions was approximately $500,000.

The Superior Court concluded certain of the Microsoft stock options were acquired during Patricia and Robert's marriage while a majority of the stock options were acquired by Robert after they separated. Based on this conclusion, the Superior Court apportioned 50 percent of the profit from the exercised

May 1990 stock option (approximately $250,000), 25 percent of the unexercised May 1990 stock option (125 shares), and 25 percent of the November 1990 stock option (1,562.5 shares) to Patricia as community property. The Superior Court distributed the remaining stock options to Robert. A decree of dissolution was entered on May 10, 1991.

Patricia appealed, contending it was error for the Superior Court to characterize a majority of the Microsoft stock options as separate property. The Court of Appeals agreed, concluding the Microsoft stock options were acquired during Patricia and Robert's marriage and that therefore all the Microsoft stock options were community property. *In re Marriage of Short*, 71 Wn. App. 426, 442, 859 P.2d 636 (1993). Robert filed a petition for discretionary review challenging the Court of Appeals' decision. We granted review.

## ISSUES

The primary issue is whether employee stock options are characterized as separate property or community property under RCW 26.16 when the stock options were granted to the employee spouse during marriage, but vest when the marital parties are "living separate and apart". Robert also contends the Court of Appeals erred in reversing the amount and duration of the maintenance award the Superior Court granted to Patricia.

## ANALYSIS

### I

■ To begin our analysis we review and reaffirm certain applicable presumptions. One such presumption is that in community property jurisdictions, assets acquired during marriage are community property. *Estate of Madsen v. Commissioner*, 97 Wn.2d 792, 796, 650 P.2d 196 (1982); Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 Wash. L. Rev. 13, 28 (1986). This presumption is rebuttable by establishing that the acquisition fits within a separate property provision. Cross, 61 Wash. L. Rev. at 29.

Separate property is defined as property acquired before marriage or acquired after marriage by gift, bequest, devise

or descent. RCW 26.16.010, .020; *In re Marriage of Brown*, 100 Wn.2d 729, 737, 675 P.2d 1207 (1984). Separate property also includes the earnings and accumulations of a husband or a wife while living separate and apart. "When a husband and wife are living separate and apart, their respective earnings and accumulations shall be the separate property of each." RCW 26.16.140; *Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 372, 754 P.2d 993 (1988).

■ The "living separate and apart" statute contemplates a permanent separation, a "defunct" marriage. *Bunt*, 110 Wn.2d at 372; Cross, 61 Wash. L. Rev. at 34. A marriage is considered "defunct" when both parties to the marriage no longer have the will to continue the marital relationship. Cross, 61 Wash. L. Rev. at 34. In other words, when the deserted spouse accepts the futility of hope for restoration of a normal marital relationship, or just acquiesces in the separation, the marriage is considered "defunct" so that the "living separate and apart" statute applies. Cross, 61 Wash. L. Rev. at 35. The Superior Court made a finding of fact that Patricia and Robert separated on January 18, 1989. Neither party disputes this finding. Neither party argues the marriage was "defunct" on a date other than January 18, 1989.

Community property is all other property acquired by either spouse after marriage that is not separate property. RCW 26.16.030; *Brown*, 100 Wn.2d at 735-37.

The characterization of employee stock options as separate property or community property under RCW 26.16 depends upon when the employee stock options were acquired. *Estate of Madsen v. Commissioner*, 97 Wn.2d 792, 797, 650 P.2d 196 (1982); *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 865, 855 P.2d 1210 (1993). A vested employee stock option is acquired when granted. An unvested employee stock option is not so easily characterized and requires a more complex analysis. An unvested employee stock option is one that provides no legal title or rights of absolute ownership over the stock option to the employee. *See* Black's Law Dictionary 1418 (6th ed. 1990). The Microsoft stock options, contingent upon Robert's continued employment at Microsoft, were unvested when granted.

As noted by the Court of Appeals, most states apply a "time rule" formula, similar to the one set forth in the California case of *In re Marriage of Hug*, 154 Cal. App. 3d 780, 201 Cal. Rptr. 676, 46 A.L.R.4th 623 (1984), to determine when unvested employee stock options are acquired.[2] *Short*, 71 Wn. App. at 437. The "time rule" is a formula for allocating stock options according to the employment services performed prior to and after the date the parties were "living separate and apart". The "time rule" is nothing more than a fraction whose numerator is the period of time between the commencement of the spouse's employment by the employer granting the stock options and the date the parties were found to be "living separate and apart", and the denominator is the period of time between commencement of employment and the date when each option is first exercisable, multiplied by the number of shares which can be purchased on the date the option is first exercisable. *See Hug*, 154 Cal. App. 3d at 782.

The characterization of stock options according to the "time rule" is not inflexible and may be modified depending upon the particular facts of a case, including the different purposes served by granting employee stock options. *Hug*, 154 Cal. App. 3d at 792. Employee stock options may be granted for past, present, or future employment services. *Hug*, 154 Cal. App. 3d at 786.

---

[2]*See, e.g., Salstrom v. Salstrom*, 404 N.W.2d 848, 851 (Minn. Ct. App. 1987) (employee stock options granted to one spouse prior to the dissolution of marriage, yet scheduled to vest after the dissolution of marriage, should have been apportioned to reflect their marital and nonmarital aspects); *Warren v. Warren*, 2 Ariz. App. 206, 208, 407 P.2d 395 (1965) (after dissolution of the marriage, husband's interest in company stock purchase plan, which is dependent upon his continued employment at the company, is the husband's separate property); *Hall v. Hall*, 88 N.C. App. 297, 307, 363 S.E.2d 189 (1987) (unvested stock options granted to an employee which are not exercisable as of the date of separation and which may be lost as a result of events occurring thereafter, are the separate property of the spouse for whom they may, depending upon the circumstances, vest at some time in the future). *But see Smith v. Smith*, 682 S.W.2d 834, 837 (Mo. Ct. App. 1984) (a stock option is earned when the contract for the stock option is signed, and thus, even though continued employment was required by the husband after the divorce trial to exercise many of the options, all the options were characterized as marital property).

The characterization and distribution of employee stock options under Washington domestic relations law is an issue of first impression in this jurisdiction. The Washington cases cited to us by both Robert and Patricia are distinguishable and are not controlling. *See, e.g., In re Marriage of Landry,* 103 Wn.2d 807, 808, 699 P.2d 214 (1985) (a pension benefits case that apportioned property based upon where the parties were domiciled); *Wilder v. Wilder,* 85 Wn.2d 364, 369, 534 P.2d 1355 (1975) (19 of the 20 years required for the pension to vest had passed and the court found it virtually certain that the appellant would become entitled to his pension, barring some unforeseen event beyond his control); *In re Marriage of Sedlock,* 69 Wn. App. 484, 505-08, 849 P.2d 1243 (investments purchased during marriage that carried warrants to purchase stocks at a predetermined price with community funds were community property), *review denied,* 122 Wn.2d 1014 (1993); *Freeburn v. Freeburn,* 107 Wash. 646, 182 P. 620 (1919) (the case did not discuss the "living separate and apart" provision of RCW 26.16.140).

To determine how unvested employee stock options are characterized under RCW 26.16, a trial court must first ascertain whether the stock options were granted to compensate the employee for past, present, or future employment services. This involves a specific fact-finding inquiry in every case to evaluate the circumstances surrounding the grant of the employee stock options. Unvested employee stock options granted during marriage for present employment services, assuming the parties were not "living separate and apart" under RCW 26.16.140 when the stock options were granted, are acquired when granted. Unvested employee stock options granted for future employment services are acquired over time as the stock options vest. *See In re Estate of Binge,* 5 Wn.2d 446, 484, 105 P.2d 689 (1940). There were no unvested employee stock options granted for past employment services before the trial court.

The Superior Court examined the facts and circumstances surrounding the grant of the Microsoft stock options to Robert and determined certain of the stock options were granted

to Robert for present services — to induce Robert to accept employment with Microsoft. The Superior Court concluded 100 percent of the exercised May 1990 stock option, 50 percent of the unexercised May 1990 stock option, and 50 percent of the November 1990 stock option were granted to Robert for present services. These stock options were characterized by the Superior Court as community property and were apportioned to Patricia and Robert equally. The Superior Court ruled the remaining stock options were granted to Robert for future services — to ensure Robert's continued employment and future productivity at Microsoft.

■ This court will not disturb findings of fact by a trial court when the findings are supported by substantial evidence. *Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 18-19, 846 P.2d 531 (1993); *In re Marriage of Luckey*, 73 Wn. App. 201, 206, 868 P.2d 189 (1994). Our review of the record is limited to determining whether substantial evidence exists to support the finding of fact. *Boeing Co.*, 121 Wn.2d at 18-19. Evidence supporting the finding that certain of the Microsoft stock options were granted to Robert for present services include: Microsoft's front-loading of the stock options and Robert's acceptance of employment at Microsoft in lieu of establishing a competing computer technology business. Evidence supporting the finding that a majority of the Microsoft stock options were granted to Robert for future employment services include: the Plan and Robert's stock option contract. We determine substantial evidence exists for the Superior Court's findings.

■■ After determining whether employee stock options were granted to compensate the employee for past, present, or future employment services, the "time rule" is applied. For future employment services, the "time rule" is applied to the first stock option to vest after the parties are found to be "living separate and apart". This is the lone stock option that includes both a community effort and a separate effort. We do not apply the "time rule" to every stock option that vests after the parties are found to be "living separate and apart" because to do so ignores the separate property provi-

sions of RCW 26.16. Multiple stock options granted for future services vest consecutively, not concurrently. Such a ruling insures that stock options are characterized and apportioned to reflect their marital and nonmarital aspects. This interpretation of the "time rule" differs from that announced in *In re Marriage of Hug*, 154 Cal. App. 3d 780, 201 Cal. Rptr. 676, 46 A.L.R.4th 623 (1984).

The first stock option to vest after Patricia and Robert were "living separate and apart" was the May 17, 1990, stock option. As previously indicated, 12,250 of the 12,500 May 17, 1990, stock option shares were characterized by the Superior Court as community property for present services. That leaves 250 shares uncharacterized. The "time rule" is applied to those shares, which results in one-ninth of the 250 shares, or 28 shares, being characterized under the "time rule" as community property. The Superior Court, on remand, must distribute these 28 shares. The November 17, 1990, stock option and all subsequent stock options vested while Patricia and Robert were "living separate and apart" or after the decree of dissolution was entered. These stock options, minus the amount characterized as community property for present services, were earned exclusively by Robert and were properly apportioned by the Superior Court to Robert. The "time rule" is not applicable to these stock options.

We reverse the Court of Appeals, reinstate the Superior Court decision, and remand the case to the Superior Court to distribute the additional 28 shares from the May 17, 1990, stock option.

## II

Robert contends the Court of Appeals erred in reversing the amount and duration of the maintenance award the Superior Court granted to Patricia. The Court of Appeals voided the nonmodification provision contained in Patricia and Robert's decree of dissolution and ordered that the amount and duration of the maintenance award be reconsidered. *In re Marriage of Short*, 71 Wn. App. at 442-44.

■ RCW 26.09.170(1) provides that, except as otherwise allowed by RCW 26.09.070(7), a maintenance award shall be modifiable, but only as to installments accruing subsequent to the petition for modification and only upon a showing of a substantial change of circumstances. RCW 26.09.070(7) provides that a nonmodifiable maintenance award is permissible if such a provision was included in a separation contract entered into by the parties. Because Patricia and Robert did not enter into a separation contract, the Superior Court should not have included a nonmodifiable maintenance award provision in the decree of dissolution.

■ We affirm the Court of Appeals' decision that, absent a separation contract, a nonmodifiable maintenance award provision may not be written into a decree of dissolution. We rule, as a matter of law, that whenever a nonmodifiable maintenance award provision is stricken from a decree of dissolution, the amount and duration of the maintenance award must be reconsidered. Accordingly, we remand the case to the Superior Court to strike the nonmodifiable maintenance award provision from Patricia and Robert's decree of dissolution and to reconsider the amount and duration of the maintenance award.

### Conclusion

We reverse the Court of Appeals in part, affirm in part, and remand the case to the Superior Court to distribute the 28 additional shares, to strike the nonmodifiable maintenance award provision from Patricia and Robert's decree of dissolution, and to reconsider the amount and duration of the maintenance award. Although requested, no costs or attorney fees under RCW 26.09.140 are awarded to Patricia for her appeal to this court. The award of reasonable attorney fees by the Court of Appeals is unchanged by this opinion.

DURHAM, C.J., UTTER, DOLLIVER, SMITH, JOHNSON, and MADSEN, JJ., and BRACHTENBACH, J. Pro Tem., concur.

ANDERSEN, J. Pro Tem., concurs in the result.

After modification, further reconsideration denied May 11, 1995.