FILED
MAY 7, 2013
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 30662-3-III |
| | ) | |
| LIUBOV A. SCHMIDT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| KENNETH R. SCHMIDT, | ) | |
| | ) | |
| Respondent. | ) | |

KULIK, J. — The trial court has broad discretion in making a just and equitable distribution of property and awarding maintenance in a dissolution action. Here, Liubov Schmidt appeals the trial court's division of property and award of maintenance. Ms. Schmidt contends that the court erred by failing to characterize the increased value in Mr. Schmidt's lending enterprise as community property. Ms. Schmidt also contends that the court failed to consider the needs of the parties and the ability of the parties to pay. We conclude the trial court properly exercised its discretion, and we affirm its order.

FACTS

Liubov Schmidt and Kenneth Schmidt began communicating with each other in 2004 through an online Christian dating site. Ms. Schmidt lived in Russia and owned a successful travel agency. Before owning her travel business, Ms. Schmidt operated a sunflower oil business and a sewing business. She earned two music degrees and one health education degree.

Mr. Schmidt lived in College Place, Washington. Mr. Schmidt was a retired civil engineer and government employee. He derived his income from social security, a government pension, and from a private lending enterprise.

The couple's relationship developed romantically. In 2005, Ms. Schmidt immigrated to the United States and the couple married. She sold her business and gave the money to Mr. Schmidt. She donated her home to her church in Russia.

While married, Ms. Schmidt worked part time as a violin teacher and as a member of the Walla Walla Symphony. She earned as much as $18,000 per year. Ms. Schmidt used the money to fund her son's education. Mr. Schmidt continued to earn an income from his investment enterprise.

The couple built a new house funded with Mr. Schmidt's separate property. Ms. Schmidt signed a quit claim deed in which she declared no interest in the property.

Ms. Schmidt filed for divorce in May 2010. The couple was married for about four and one-half years. The parties proceeded to trial to determine property division and maintenance.

Ms. Schmidt alleged that Mr. Schmidt treated her poorly during the marriage. She claimed that he emotionally abused her and kept her on a very limited budget. She claimed that the stress of the marriage caused her to have difficulty sleeping, migraines, and joint pain, which limited her ability to work. She was diagnosed with fibromyalgia, and was treated with medication and therapy.

A psychiatric evaluation conducted by Dr. Ronald Page showed that Ms. Schmidt demonstrated symptoms of pain, but that doctors could not identify the source of the pain. Dr. Page suggested that the pain was psychosomatic and caused by the stress of the dissolution proceedings. Dr. Page determined that Ms. Schmidt would be able to return to her normal level of functioning, including employment, within a short time after the stress ended. Dr. Page specifically found that Ms. Schmidt was a creative, self-motivated, and skilled person who had the ability to find gainful employment, despite the challenges of being an immigrant.

As for the house, Ms. Schmidt contended that she was led to believe that she was an owner of the house. It was not until later that she realized the documents she signed

relinquished her interest in the home. In contrast, the escrow manager who closed the loan testified that she would have explained to Ms. Schmidt that her husband was buying the property by himself and that she would not be on the title.

Ms. Schmidt contended that the community had an interest in Mr. Schmidt's lending enterprise. She maintained that Mr. Schmidt contributed community labor to the enterprise, thus giving the community an interest in the increased value of the enterprise. As proof of Mr. Schmidt's labor, Ms. Schmidt submitted Mr. Schmidt's tax returns in which he indentified his occupation as an investor and declared business expenses, including 11,000 miles for business travel. Mr. Schmidt testified that he generated about $183,000 in interest from loans during the marriage.

Mr. Schmidt contended that he devoted very little time to the lending enterprise. He presented testimony of Edward Anderson, a real estate broker, who maintained that he originated many of Mr. Schmidt's loans. He testified that he would evaluate the loans and present the loan opportunity to Mr. Schmidt. Mr. Schmidt would review the paperwork and generally had one day to accept the loan and respond to Mr. Anderson. After the loan was complete, Mr. Schmidt monitored the payments. In total, Mr. Anderson testified that Mr. Schmidt spent approximately one or two hours on each loan.

For liabilities, Ms. Schmidt presented evidence of dental complications she suffered through the marriage. Ms. Schmidt's dentist identified approximately $11,000 in dental work that Ms. Schmidt was likely to require, in addition to the $1,853 already owed. Previously, Ms. Schmidt had several root canals and implants, which were paid for by Mr. Schmidt.

The court issued a memorandum opinion, findings of fact and a decree of dissolution. The court found that there was little personal property to divide. The court awarded to Ms. Schmidt the household furnishings and her few items of separate property. The court awarded to Mr. Schmidt his office equipment and papers, the contents of the garage, electronic equipment and furniture in the master bedroom, and a few other items.

The court awarded the house to Mr. Schmidt as his separate property. The court found that Mr. Schmidt used his separate funds to build the home and that Ms. Schmidt did not contribute money or significant labor into the home. The court also found the closing agent's testimony credible that Ms. Schmidt knowingly signed away her interest in the property via a quit claim deed.

As for Mr. Schmidt's investment enterprise, the court determined that most of the contracts were in place before marriage, that most of the contracts were facilitated

through Mr. Anderson, that all of the contracts were the product of work, oversight, monitoring and investment resources of Mr. Schmidt, and that Ms. Schmidt did not contribute to the business. Regarding Mr. Anderson's business relationship with Mr. Schmidt, the court found Mr. Anderson's testimony credible.

The court determined that Mr. Schmidt's lending enterprise was his separate property. The court found that Mr. Schmidt devoted a minimal or insubstantial amount of time in running his business. The court also considered the nature of the business contracts and profits as to whether they are separate, community, or mixed. The court found that two to four contracts that were generated by Mr. Schmidt could be considered community property, but that these loans did not generate a profit and had no community value.

Despite the failure to find any significant community property, the court awarded Ms. Schmidt $25,000 cash for her share of community property.

In determining maintenance, the trial court considered all of the factors listed in RCW 26.09.090. The court found that Ms. Schmidt had some health issues that hindered her ability to work in certain fields, but noted that Ms. Schmidt should be able to return to employment within 18 months and had the ability to earn approximately $18,000 per year by teaching music lessons and working for the symphony. While the court recognized

6

that Ms. Schmidt was 50 years old, the court found that she had the skills and training needed to return to gainful employment and that additional schooling or training was not needed.

The trial court discredited Ms. Schmidt's testimony that she suffered emotional domestic violence and attributed most of the stress in the marriage to the parties' cultural and language difficulties. The court found Dr. Page's report evaluation and conclusions to be credible.

The trial court acknowledged that since the separation, Mr. Schmidt paid all of Ms. Schmidt's daily living expenses, dental and medical expenses, and automobile and housing expenses. This amount totaled $55,000. The court awarded Ms. Schmidt $2,000 per month in maintenance for a 24-month period. The court ordered Ms. Schmidt to pay her outstanding dental bills.

In addition to the $25,000 property award and the $2,000 monthly maintenance award, the trial court also ordered Mr. Schmidt to pay $10,000 toward Ms. Schmidt's legal fees. The court concluded that Mr. Schmidt did not have to pay for all of Ms. Schmidt's legal fees because Ms. Schmidt unnecessarily protracted the proceeding based on largely irrelevant, unsupported allegations.

Ms. Schmidt appeals the court's division of property and award of maintenance.

7

ANALYSIS

*Property Characterization.* In a dissolution action, the court must make a "just and equitable" distribution of the marital property. RCW 26.09.080. However, before considering distribution, the court must characterize the marital property as either separate or community. *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). A court's characterization of property as either separate or community is a question of law subject to de novo review. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). If the court makes factual findings regarding characterization, the findings may be reversed only if they are not supported by substantial evidence. *Griswold*, 112 Wn. App. at 339. "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).

Ms. Schmidt contends that the trial court erred in failing to characterize the increased value in Mr. Schmidt's lending enterprise as community property. The issue here is whether the time Mr. Schmidt contributed to his lending enterprise created a community interest in the increased value in the enterprise.

All of the parties' property, both community and separate, is before the court for distribution. *Friedlander v. Friedlander*, 80 Wn.2d 293, 305, 494 P.2d 208 (1972).

8

Assets acquired during a marriage are presumed to be community property. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). This presumption may be rebutted by showing the assets were acquired as separate property. *Id.*

Property that was separate when brought into the marriage is presumed to maintain its character, unless rebutted by direct and positive evidence to the contrary. *In re Marriage of Elam*, 97 Wn.2d 811, 814, 650 P.2d 213 (1982) (quoting *Hamlin v. Merlino*, 44 Wn.2d 851, 857-58, 272 P.2d 125 (1954)). Similarly, any increase in the value to separate property is presumed to be separate property, unless the spouse claiming the community property interest rebuts the presumption by producing direct and positive evidence that the increase is attributable to community funds or labors. *Id.* at 816-17.

While the community is entitled to the increase of value in separate property due to the labor of each member performed during the relationship, the community is not entitled to the natural increase of the value of separate property. *In re Marriage of Lindemann*, 92 Wn. App. 64, 69-70, 960 P.2d 966 (1998). "The spouse with the separate ownership interest may defend against the other spouse's claim of an equitable interest by showing that the increase in value is attributable not to community contributions of labor or funds, but rather to rents, issues and profits or other qualities inherent in the business." *Id.*

9

Here, any increase of the value of the enterprise is not community property. Mr. Schmidt's labor did not increase the value of Mr. Schmidt's separate lending enterprise. The trial court specifically addressed this issue, finding that the time Mr. Schmidt contributed to his business interest to be minimal or insubstantial. This finding is supported by substantial evidence. Mr. Schmidt stated that Mr. Anderson primarily handled his business. Mr. Anderson also testified to his loan development procedures, and the amount of contact that he had with Mr. Schmidt in the process. He testified that it took a total of about one to two hours from when he first contacted Mr. Schmidt with a loan proposal to when he closed the loan. Mr. Anderson further testified that once the loan was closed, Mr. Schmidt's management of the account was simply to monitor payments. The trial court's finding regarding Mr. Schmidt's contribution of labor is supported by substantial evidence.

Contrary to the court's finding, Ms. Schmidt produced evidence that Mr. Schmidt claimed business expenses from the enterprise and classified himself as an investor. However, the trial court did not give weight to this evidence and found Mr. Anderson's testimony credible. Based on the trial court's findings, Mr. Schmidt's minimal amount of labor did not increase the value of his separate lending enterprise. Therefore, any increase of the value of the enterprise is not community property.

10

In her reply brief, Ms. Schmidt appears to argue that the loans from the lending

enterprise should be community property because Mr. Schmidt comingled the business

loans with the household funds, yet failed to trace the loans to his separate property.  She

brings in new case law to establish that when separate property funds are deposited into a

joint checking account, the separate property presumably becomes community property,

unless the owner exhaustively presents documentation to trace the property to the separate

source.  *Skarbek*, 100 Wn. App. at 449-50.

We consider this to be a new argument raised on reply.  While Ms. Schmidt

mentions the failure to segregate business and household funds in her opening brief, she

does so only in the context of showing that Mr. Schmidt did not specifically designate any

portion of the lending enterprise income to the marital community to compensate for Mr.

Schmidt's community labor, thus comingling the separate and community property.

Because the particular issue raised in *Skarbek* was not addressed in Ms. Schmidt's

opening brief, Mr. Schmidt did not have the opportunity to respond.  Thus, we decline to

address this issue on appeal.

The trial court did not err by failing to characterize the increased value in Mr.

Schmidt's lending enterprise as community property.

*Property Division.* The trial court has broad discretion in distributing the marital property and its decision will be reversed only when discretion was exercised on untenable grounds or for untenable reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). This deferential standard of review exists because the trial court is "in the best position to assess the assets and liabilities of the parties" in order to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

RCW 26.09.080 instructs a trial court to make a "just and equitable" distribution of the parties' property. The statute's nonexclusive list of factors to be considered is: (1) the nature and extent of the community property; (2) the nature and extent of the separate property; (3) the duration of the marriage; and (4) the economic circumstances of the parties. RCW 26.09.080.

A just and equitable division by a trial court "does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties." *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996).

12

Here, the trial court's award to Ms. Schmidt of $25,000 and the miscellaneous items is not an abuse of discretion. Ms. Schmidt did not have a large property interest in the four and one-half year marriage. Ms. Schmidt's community property award was appropriate based on the court's finding that there was very little community property to distribute. Also, the court found Ms. Schmidt's separate property to be minimal.

Admittedly, the record shows that Mr. Schmidt's economic circumstance was considerably better than Ms. Schmidt's. However, this does not automatically lead to the conclusion that Ms. Schmidt was owed a larger award. The court identified Mr. Schmidt's separate property primarily as the house and the lending enterprise, and states that Ms. Schmidt did not contribute money or labor to the construction of the home or the operation of the business. Furthermore, the court took into consideration the fact that Mr. Schmidt partially compensated Ms. Schmidt between separation and trial by paying $55,000 in temporary maintenance, medical and dental bills, and other miscellaneous expenses.

The court also recognized Ms. Schmidt's unique situation. The court found that Ms. Schmidt was a 50-year-old immigrant, who came to the United States to marry Mr. Schmidt, who had very little separate property, and who earned a moderate annual income of approximately $18,000. The court also found that Ms. Schmidt had some health issues

that hindered her ability to work in certain fields. In this respect, leaving Ms. Schmidt with no assets would not be a just and equitable distribution of the property. Even though Ms. Schmidt contributed few assets to the community, the trial court had an obligation to consider the needs of Ms. Schmidt. The trial court acted appropriately by awarding Ms. Schmidt $25,000.

Thus, the trial court's award to Ms. Schmidt did not constitute an abuse of discretion considering the lack of community property, the separate nature of Mr. Schmidt's income, and the payments made after the parties were separated. Awarding Ms. Schmidt $25,000 in cash and miscellaneous property was a just and equitable distribution.

*Maintenance.* The trial court's decision on an award of maintenance is reviewed for an abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). An abuse of discretion occurs when the court bases its decision on untenable grounds or for untenable reasons. *In re Marriage of Foley*, 84 Wn. App. 839, 845, 930 P.2d 929 (1997). The court has wide discretion in deciding the amount and term of maintenance, with the only limitation being that the award is just in light of all relevant factors. *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). "An

award of maintenance that is not based upon a fair consideration of the statutory factors constitutes an abuse of discretion." *Crosetto*, 82 Wn. App. at 558.

RCW 26.09.090 controls the awarding of maintenance. The court must consider (1) the post-dissolution financial resources of the parties; (2) their abilities to independently meet their needs; (3) the time necessary for the party seeking maintenance to find employment; (4) duration of the marriage; (5) the standard of living during the marriage; (6) the age, physical, and emotional condition, and financial obligations of the spouse seeking maintenance; and (7) the ability of the spouse from whom maintenance is sought to meet his needs and financial obligations. RCW 26.09.090(a)-(f).

The maintenance award adequately provided compensation to Ms. Schmidt. The court considered the factors listed in RCW 26.09.090(a) through (f). The court noted that Ms. Schmidt had a modest amount of separate property which essentially had no value. However, the court found that Ms. Schmidt would receive a $25,000 cash award for her share of community property. The court also found that Ms. Schmidt would be able to return to work in music education or travel with no additional training, and had the ability to meet at least 50 percent of her monthly expenses.

The court stated that the parties were married for four and one-half years and enjoyed a middle class lifestyle. Mr. Schmidt paid all of her living expenses and bills

15

since separation, making the remaining dental bill the only financial obligation owed by Ms. Schmidt. The court found that Mr. Schmidt had the ability to pay reasonable maintenance and his own financial obligations.

Dr. Page's report provides support for the trial court's findings. Dr. Page concluded that Ms. Schmidt "is very likely to rebound in short order to levels of greater comfort and productivity, once she is situationally beyond the process of contested divorce." Clerk's Papers at 120. Furthermore, Ms. Schmidt has demonstrated her ability to use her music training as a means for income by teaching lessons during the marriage.

The court's award of $2,000 per month for 24 months allowed Ms. Schmidt the time she needed to seek out a career in the United States and maintain her middle class lifestyle. The trial court did not abuse its considerable discretion in its award of maintenance for Ms. Schmidt, considering Ms. Schmidt's potential for employment and potential income, her limited liabilities, and the relatively short duration of the marriage.

The trial court's property division and award of maintenance did not constitute an abuse of discretion.

*Attorney Fees.* Mr. Schmidt requests attorney fees pursuant to RAP 18.1(b). Mr. Schmidt fails to cite to legal authority that would allow this court to make such an award on appeal.

16

In any case, Mr. Schmidt's request fails. To award attorney fees on an appeal of a dissolution proceeding, the court examines the merits of the appeal and the financial resources of the parties. *In re Marriage of Mansour*, 126 Wn. App. 1, 17, 106 P.3d 768 (2004) (quoting *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990)). Ms. Schmidt brought forth worthwhile issues on appeal. Furthermore, Ms. Schmidt lacks the financial resources to pay Mr. Schmidt's attorney fees. Mr. Schmidt's request is denied.

We affirm the trial court's order.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:


_____        _____
Brown, J.                               Korsmo, C.J.

17