IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 79303-9-I |
| GOLDEN S. TULLIS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| LESLIE B. TULLIS, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Leslie Tullis appeals several of the trial court's final orders and findings following her divorce from Golden Tullis. Leslie[1] argues the trial court erred by awarding Golden sole decision-making authority over the couple's children despite the court's finding that he has a history of acts of domestic violence. Leslie also contends that the court erred in the allocation of her restricted stock units (RSUs) and student loan debt. We reverse the trial court's order granting Golden sole decision-making authority over the couple's children, affirm the trial court's allocation of Leslie's RSUs, and remand the issue of Leslie's student loan debt for further clarification.

---

[1] For clarity, we refer to Leslie and Golden Tullis by their first names. No disrespect is intended.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Golden and Leslie married in June 2008. Shortly after the birth of their twins in 2010, the family relocated from California to Philadelphia so Leslie could attend graduate school. After Leslie completed school, the family moved back to California so she could pursue various job opportunities. In 2016, the family moved to Seattle when Leslie accepted employment at Amazon. Throughout their marriage, Golden was the primary care provider for their children.

Golden petitioned for dissolution on May 25, 2017. On June 2, Leslie called 911 to report a domestic violence assault. When the police arrived, Leslie claimed that Golden attacked her. Golden told the police that Leslie attacked him. The officers arrested Leslie for domestic violence assault. At her arraignment, the Seattle Municipal Court issued a criminal no-contact order preventing Leslie from contacting Golden and returning to the family home. Golden also obtained a temporary restraining order that prevented Leslie from contacting him and the children.

On June 7, Leslie petitioned the superior court for a domestic violence protection order (DVPO) as part of the dissolution proceeding. Golden also petitioned for a DVPO. At a hearing on June 22, the court reissued Golden's temporary restraining order but removed the children from the order and granted Leslie weekend residential time with them. The court also reissued Leslie's temporary DVPO and appointed a guardian ad litem (GAL) to investigate "[a]ll issues related to making a parenting plan" for the children. At the same hearing, the court referred both parties to Family Court Services (FCS) for a domestic

2

violence assessment.

Leslie told the FCS caseworker that Golden physically and sexually assaulted her throughout their relationship. Golden told the caseworker that he did not believe that he had ever sexually assaulted Leslie but acknowledged that he had admitted before to raping her. The FCS caseworker found Leslie more credible and recommended that the court grant her request for a DVPO. At a September 2017 hearing, the court dismissed Golden's petition for a DVPO, granted Leslie's request for a DVPO, and ordered Golden to enroll in a domestic violence batterer's treatment program.

The GAL issued a 66-page report in November 2017. The GAL based her report on several interviews with Leslie and Golden, one child interview, multiple home visits, and interviews with more than 15 family friends, physicians, and therapists. She also reviewed over 170 documents, including e-mails, photographs, police reports, court orders, and psychological test results for both Leslie and Golden. The GAL recommended a shared residential schedule for the children. She also recommended that Golden participate in a domestic violence intervention program and noted that a history of domestic violence may warrant restrictions against Golden. But the GAL also noted that "[f]uture risk of violence to Ms. Tullis and to the children seems low." The GAL concluded:

> Major Decisions should be joint. If the court is required to grant sole decision making due to [domestic violence], Mr. Tullis should have major decisions, which reflects his past history as primary parent.

At trial, the parties asked the court to decide several issues, including child support, spousal maintenance, a permanent parenting plan, characterization and

allocation of 450 shares of RSUs issued to Leslie from her employer, and allocation of Leslie's student loan debt. Many of Leslie's RSUs had not vested when Golden filed for dissolution. Leslie and Golden offered conflicting vesting schedules for the RSUs. They also argued about whether accrued interest from Leslie's student loan debt should be allocated to Golden. Golden asked the court to follow the GAL's recommendation of an equal residential schedule and asserted he "should make the major decisions due to his history as the primary parent," while Leslie "should be allowed input into major decisions prior [to] their implementation." Leslie argued that because of Golden's domestic violence history, she should have sole decision-making authority and the court should limit Golden's residential time, making her the residential parent.

The court issued an oral ruling after trial. The court explained that it would impose restrictions against Golden under RCW 26.09.191 based on a history of acts of domestic violence, but because there was "overwhelming evidence of record that the father was historically the children's primary care provider" and that Golden posed "no physical, sexual, or emotional abuse of harm to either child," it would not restrict Golden's residential time with the children. The court agreed with the GAL's recommendation that the children should reside with their parents equally. The court also awarded Golden sole decision-making authority over the children with the requirement that he "solicit and consider the mother's input."

In considering allocation of Leslie's RSUs, the court referred twice to Leslie's proposed vesting schedule, admitted as exhibit 183. But it also found

4

that Leslie "moved RSU benefits and funds without notice to" Golden and stated that it generally agreed with Golden's proposed division of assets and debts, a spreadsheet admitted as exhibit 74 that incorporated his proposed RSU vesting schedule. Finally, the court characterized Leslie's student loan debt as community property and allocated 25 percent of the obligation to Golden but did not address accrued interest.

Three months after its oral ruling, the court held a hearing to discuss the parties' proposed final orders. Leslie argued that there were several errors in Golden's proposed orders and requested that the court adopt her proposed written findings and orders. She argued that Golden's proposed vesting dates for her RSUs were "wrong." Leslie also argued that the allocation of 25 percent of her student loan debt to Golden should include accrued interest. Golden claimed that his proposed allocation of the RSUs in his assets and debts spreadsheet was accurate and argued that Leslie chose to defer paying interest on her student loans, so "she should bear the expense for that."

The trial court issued final written orders on November 1, 2018. The court did not incorporate its oral ruling in the written orders. In its final parenting plan, the court found Golden had a history of acts of domestic violence under RCW 26.09.191(2)(a)(iii) and ordered Golden to "continue to comply with" domestic violence treatment. The court named Golden as the custodial parent and ordered equal residential time with both parents. The court awarded Golden sole decision-making authority but ordered that he provide seven days' notice to

5

Leslie about major decisions.  The court explained:

> Per RCW 26.09.191(1)(c), the permanent parenting plan shall not require mutual decision-making . . . . The father was historically the children's primary care provider.  Therefore, the father shall have sole decision-making authority on major decisions.

In its findings of fact and conclusions of law (Findings), the court adopted Golden's vesting schedule of Leslie's RSUs and characterized them as community or separate property accordingly.  It awarded Leslie all of the RSUs and ordered her to pay Golden $62,021.09 as an equalization payment to account for RSUs characterized as community property.  Also in its Findings, the court appeared to adopt Golden's valuation of Leslie's student loan debt in his assets and debts spreadsheet.  It determined that the debt totaled $243,342.94.  But in the dissolution decree (Decree), the court totaled the debt at $277,954.24, Leslie's valuation of her student loan debt with accrued interest.

Leslie appeals.

ANALYSIS

Leslie argues that the trial court erred in awarding Golden sole decision-making authority after finding that he has a history of domestic violence under RCW 26.09.191.  She also contends that the court misallocated the distribution of her RSUs because it mistakenly relied on the wrong vesting schedule and that it erroneously failed to include accrued interest in the allocation of her student loans.

Sole Decision-Making Authority

Leslie contends that RCW 26.09.191 and RCW 26.09.187(2)(b) preclude the court from granting sole decision-making authority to a parent that the court

expressly finds has a history of acts of domestic violence under RCW 26.09.191(2)(a)(iii). We agree.

We ordinarily review a trial court's decision on parental decision-making authority for an abuse of discretion. In re Marriage of Jensen-Branch, 78 Wn. App. 482, 490, 899 P.2d 803 (1995). But statutory interpretation is a question of law that we review de novo. In re Marriage of MacLaren, 8 Wn. App. 2d 751, 768, 440 P.3d 1055 (2019). The primary purpose of statutory interpretation is to determine and give effect to legislative intent. In re Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.3d 492 (2016). We give effect to all of the language in the statute and do not render any portion meaningless or superfluous. In re Marriage of C.M.C., 87 Wn. App. 84, 87-88, 940 P.2d 669 (1997); State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the plain meaning of a statute is unambiguous, our inquiry ends. In re Marriage of Zandi, 187 Wn.2d 921, 927, 391 P.3d 429 (2017).

Here, the trial court's Findings state, in pertinent part:

> The evidence of record supports a finding that the father engaged in verbally and physically aggressive behavior against the mother during the marriage that rose to the level of domestic violence per RCW 26.09.191(2)(a)(iii).[2]

RCW 26.09.191(1)(c) provides that a parenting plan "shall not require mutual decision-making . . . if it is found that a parent has engaged in . . . a history of acts of domestic violence."

---

[2] RCW 26.09.191(2)(a)(iii) provides, "The parent's residential time with the child shall be limited if it is found that the parent has engaged in . . . a history of acts of domestic violence." While Leslie "disagrees with the court's decision not to limit Golden's residential time" pursuant to RCW 26.09.191(2)(a)(iii), "she does not appeal from that discretionary ruling."

Golden argues the plain language of RCW 26.09.191(1)(c) does not specify to which parent the court should award sole decision-making authority based on a finding that "a parent" has a history of domestic violence. He claims that the intent of the legislature is to "allow[ ] the trial court the necessary flexibility to assign sole decision-making authority to whichever parent would best serve the interests of the children." But Golden reads RCW 26.09.191 in a vacuum.

When trying to determine a statute's plain meaning, we consider the " 'context of the entire act' " as well as related statutes. Zandi, 187 Wn.2d at 927 (quoting Jametsky v. Olsen, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002))). RCW 26.09.187 provides criteria for establishing a permanent parenting plan. Section (2)(b)(i) of that statute requires a court to "order sole decision making to one parent when it finds that . . . [a] limitation on the other parent's decision-making authority is mandated by RCW 26.09.191."[3] Read together, RCW 26.09.187 and .191 unambiguously require that a permanent parenting plan must not require mutual decision-making authority if the court finds that a parent has a history of acts of domestic violence and that the court must grant sole decision-making authority to the parent who does not have a history of domestic violence. The court erred when it granted sole decision-making authority to Golden.

---

[3] Emphasis added.

Restricted Stock Units

Leslie argues that the trial court misappropriated her unvested Amazon RSUs because it relied on an incorrect vesting schedule when characterizing them as community or separate property. We disagree.

A trial court has broad discretion in distributing marital property. In re Marriage of Rockwell, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). But the distribution of the parties' property and debt must be "just and equitable." RCW 26.09.080; In re Marriage of Kaplan, 4 Wn. App. 2d 466, 476, 421 P.3d 1046, review denied, 191 Wn.2d 1025, 428 P.3d 1184 (2018). In performing its obligation to make a just and equitable distribution of property, the trial court must properly characterize the property as community or separate. In re Marriage of Kile, 186 Wn. App. 864, 875, 347 P.3d 894 (2015). A trial court's characterization of property presents a mixed question of law and fact. Kile, 186 Wn. App. at 876. We review the factual findings supporting the trial court's characterization for substantial evidence. In re Marriage of Mueller, 140 Wn. App. 498, 504, 167 P.3d 568 (2007). The ultimate characterization of the property as community or separate is a question of law that we review de novo. Kile, 186 Wn. App. at 876.

The characterization of employee stock options as separate or community property turns on when the employee acquired the stock options. In re Marriage of Short, 125 Wn.2d 865, 871, 890 P.2d 12 (1995). Unvested employee stock options that an employer grants for future employment services are acquired over time as the stock options vest. Short, 125 Wn.2d at 873. For stocks

9

granted for future employment services, a "time rule" applies to the first stocks that vest after the parties live separate and apart. Short, 125 Wn.2d at 874. The time rule ensures that stock options are characterized and apportioned to reflect their marital and nonmarital aspects. Short, 125 Wn.2d at 874-75.

Here, the parties offered conflicting vesting schedules for Leslie's RSUs. Leslie offered a Morgan Stanley vesting schedule, which the court admitted as exhibit 183. Golden offered a "personal compensation summary for Leslie from Amazon," which the court admitted as exhibit 49.[4] In its oral ruling, the court was not clear about which vesting schedule it would use to characterize Leslie's RSUs. It appeared to adopt Leslie's exhibit 183 as the vesting schedule in its oral findings of fact. The court twice referred to Leslie's vesting schedule, explaining:

> [O]n January 15 of 2018, there were 68 units. July 15th of 2018, 90 units were supposed to be vested. January 15 of 2019, 90 units were to be invested — or to be vested. And July of 2019, another 90 units.

But the court also said that it "generally accepts [Golden]'s proposed division" of assets and debts as reflected in his spreadsheet admitted as exhibit 74. That spreadsheet applied the Short "time rule" to Golden's vesting schedule in exhibit 49 and characterized the RSUs accordingly.

Three months later, the court held a hearing to discuss the parties' proposed final orders. At the October 12, 2018 hearing, Leslie argued that Golden's proposed order was inaccurate because it relied on Golden's assets

---

[4] Neither party designated exhibit 49 on appeal. As we are unable to review the exhibit, our review is limited to the trial record. See RAP 9.6; Happy Bunch, LLC v. Grandview N., LLC, 142 Wn. App. 81, 90, 173 P.3d 959 (2007).

and debts spreadsheet. Leslie explained that there is a "problem with using [Golden]'s spreadsheet because not only should the RSUs — not only are there RSUs in there that shouldn't be in there, they're also the wrong amounts."

Golden responded:

> The Court ruled that the RSUs are at [$]1[,]500 per RSU. The ones vesting in 2018, my spreadsheet applies a time rule. It comes up with [$]112,992. $77,066 separate to the wife. Okay. What I did was — $77,000 of those are her separate property. She was awarded the community portion — the entirety of the community portion of [$]112,000 as well. Right? The equalization payment offsets that value.

On November 1, 2018, the court issued its final written orders. In its Findings, the court specifically adopted Golden's vesting schedule. The court found:

> The evidence of record showed that the mother was awarded 450 total RSUs, and that 22 RSUs vested in 2016, 68 RSUs vested in 2017, 180 RSUs vested in 2018, 180 RSUs will vest in 2019 (Exhibit 49).[5]

The court then characterized the RSUs using Golden's "time rule" analysis as calculated in his spreadsheet in exhibit 74.

Leslie argues that the trial court erred in adopting exhibit 49 as the vesting schedule in its Findings because the court "expressly directed" the parties to use exhibit 183, her vesting schedule.[6] She contends that Golden misled the court

---

[5] A party's failure to designate exhibits and provide an adequate record compromises our review on appeal. In re Parentage & Custody of A.F.J., 161 Wn. App. 803, 806 n.2, 260 P.3d 889 (2011). Because Leslie did not designate exhibit 49, we accept the court's finding on its substance as a verity. A.F.J., 161 Wn. App. at 806 n.2; see Happy Bunch, 142 Wn. App. at 90.

[6] Leslie also complains that the trial court did not explain why it chose to adopt Golden's exhibit despite its apparent intent in its oral ruling to do otherwise. But she provides no legal authority to suggest that the court had an obligation to do so. When a party fails to cite to relevant authority, we generally presume that the party found none. Edmonds Shopping Ctr. Assocs. v. City of Edmonds, 117 Wn. App. 344, 353, 71 P.3d 233 (2003). Leslie is free to inquire of the court's reasoning at the remand hearing.

into adopting his vesting schedule despite the court's clear intent to proceed otherwise. The record does not support Leslie's claim. In any case, even if the trial court intended to adopt Leslie's proposed vesting schedule at the time of its oral ruling, "[a] trial court's oral opinion is only an indication of the court's views or thinking, and does not become final until or unless it is incorporated in written findings or conclusions of law." Johnson v. Whitman, 1 Wn. App. 540, 541, 463 P.2d 207 (1969). "A written order controls over any apparent inconsistency with the court's earlier oral ruling." Pham v. Corbett, 187 Wn. App. 816, 830-31, 351 P.3d 214 (2015).

Here, the trial court had a chance to consider the vesting schedules offered by each party. Leslie argued at trial and at a subsequent hearing that Golden's vesting schedule was wrong and that hers was accurate. The court chose not to incorporate its oral ruling in its final written orders and specifically to adopt Golden's vesting schedule. We do not review the trial court's credibility determinations, nor can we weigh conflicting evidence. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). Leslie fails to show that the court erred in allocating her RSUs.

### Interest on Student Loan Debt

Leslie contends that the trial court should have included accrued interest on her student loan debt when it allocated 25 percent of the obligation to Golden. Because the trial court's written orders conflict on whether the court intended to include accrued interest in its allocation, we remand for clarification.

As discussed, a trial court has broad discretion in distributing marital property. Rockwell, 141 Wn. App. at 242-43. We will reverse a property division only if there is a manifest abuse of discretion. In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). " 'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.' " Muhammad, 153 Wn.2d at 803 (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

The trial court characterized Leslie's "student loan debt incurred during the marriage [a]s a community obligation" and ordered Golden to "pay 25% of that debt or accept an offset to any equalization payment that the mother is ordered to pay to the father." Leslie testified that her student loan debt with interest totaled $277,954.24.[7] Golden argued that the court should not allocate interest incurred on the debt to him. He claimed that "it was entirely up to [Leslie] to decide whether she would continue deferring accruing interest charges for [the debt] or pay it down" and that "she should bear the expense for that." Golden valued the principal balance of the debt at $243,342.94.

In its final written orders, the trial court did not state whether it intended to include accrued interest in its 25 percent allocation of the student loan debt to Golden. In its Findings, the court valued the debt at $243,342.94. But in the Decree, the court valued the debt at $277,954.24. We remand to the trial court to resolve this conflict.

---

[7] At trial, the court admitted Leslie's June 2017 student loan statement, which valued the student loan debt with interest at $269,533.13.

<u>Attorney Fees on Appeal</u>

Golden requests attorney fees and costs on appeal under RAP 18.1 "because fees were awarded to Golden by the trial court." Under RCW 26.09.140, this court "may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." In determining whether a fee award is appropriate, we consider both the parties' relative ability to pay and the arguable merit of the issues raised on appeal. <u>Leslie v. Verhey</u>, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). We have reviewed the financial statements provided by both parties and decline to award attorney fees on appeal.

We reverse the trial court's order granting Golden sole decision-making authority over the couple's children, affirm the trial court's allocation of Leslie's RSUs, and remand the issue of Leslie's student loan debt for further clarification.

_Brennan, J._

WE CONCUR:

_Mann, C.J._          _Leach, J._