IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In re the Matter of the Marriage of          )
                                             )          No.  36900-5-III
SARAH L. S. REAM                             )
                                             )
                    Respondent,              )
                                             )
        and                                  )          UNPUBLISHED OPINION
                                             )
PATRICK A. REAM,                             )
                                             )
                    Appellant.               )

FEARING, J. — Patrick Ream appeals various rulings of the trial court in his marital

dissolution action.  We reject all but one assignment of error.  We agree that substantial

evidence does not support the trial court's calculation of income of spouse Sarah Ream.

At least, we are unable to determine if substantial evidence supports the calculation.  We

remand for reassessment of Sarah's income and redetermination of spousal maintenance

since the maintenance award was based in part on the computation of her income.

FACTS

Patrick Ream and Sarah Ream married on June 30, 2001, in Spokane.  The couple

separated on May 7, 2017.  Patrick and Sarah beget twin boys, who were fourteen years

old at the time of the marital dissolution trial.

Patrick Ream, beginning in 2008, worked as a sales executive for FISERV, a

technology firm that provides software to financial service companies.  In 2003, Patrick

and Sarah Ream collectively decided that Sarah would maintain the couple's household and raise their children in lieu of pursing a career. Accordingly, Sarah, a full-time school teacher, reduced her work hours and substitute taught, working one to two days per week.

When hired at FISERV, Patrick Ream earned a base annual salary of $128,000 with additional compensation in commissions. In 2017, while a director for FISERV, Patrick garnered $751,450. In the same calendar year, Sarah Ream earned $20,000 as a substitute teacher. Because of Patrick's income, the parties lived lavishly. They purchased luxury vehicles, collected expensive artwork, including Salvador Dali and Pablo Picasso paintings, and enjoyed luxury vacations.

Much of Patrick Ream's earnings derive from sale commissions. Pursuant to FISERV's policies, the employee must satisfy two milestones when selling a software product in order to reap a commission. First, the customer must sign a contract. On the signing of the sales contract, the salesperson garners fifty percent of his or her commission. The salesperson earns the second half of the commission when the software FISERV sold "goes live," which entails the installation and full operation of the software, at which time the customer's system begins generating revenue for FISERV. Report of Proceedings (RP) at 295. Patrick testified that FISERV remunerates salespeople with commissions for three reasons:

> I believe there is the ability to reward high performing individuals.
> The second is to attract new talent, also trying to improve the talent that
> you have so you can achieve the stated goals of the company and we

> promote through sales that drives [sic] the stock price and then finally
> would be retention of high performing individuals.

RP at 343.

In April 2016 before the couple's separation, Patrick Ream approached BMO

Harris Bank (BMO) to sell it FISERV software. On March 24, 2017, two months before

the separation, Patrick sent BMO a draft contract to purchase FISERV software. On

September 8, 2017, four months after Patrick and Sarah Ream's separation, FISERV and

BMO signed the contract. Patrick received the first half of his BMO commission before

trial on October 31, 2017. By trial in November 2018, the second half of Patrick's BMO

commission remained unpaid as BMO had yet to implement FISERV's software.

During the marriage, Patrick and Sarah Ream acquired six tracts of Spokane

residential real estate. The family home is located on E. 45th Avenue, and the other five

properties, utilized as rental properties, are scattered nearby. Before trial, the parties

stipulated to awarding Patrick one of the rentals and Sarah the family home on 45th

Avenue and the remaining four rental residences.

Some of the trial testimony concerned the income Sarah Ream received from the

four rentals. At trial, Sarah submitted financial declarations that listed her net monthly

rental income as $1,000. She testified that she personally paid for rental housing

expenses, including $500 for insurance, $737 in property taxes, $660 in a home equity

line of credit, and $977 for the mortgage on one of the properties.

Patrick Ream calculated Sarah Ream's monthly rental housing gross income at $4,950.00. Patrick found that Sarah's monthly profit from the four rental properties was $3,379.40, by subtracting $1,570.60 in monthly payments for mortgages, repairs, insurance, and taxes.

On the couple's separation, Sarah Ream returned to the teaching profession full time. Sarah secured a new, full-time position for the 2018-2019 school year, though she held no contract for this position at the time of trial in November 2018. She anticipated receiving a contract from the school district shortly after trial and expected that the contract would continue for additional years.

An October 2018 letter from the school district listed Sarah Ream's gross annual earnings at $72,525.00 for the 2018-2019 school year. $72,525.00 equates to a pretax monthly income of $6,043.75. In her proposed child support worksheet, Sarah provided for deductions for taxes, union dues, and retirement contributions. Sarah also provided pay stubs to reflect past deductions. Accounting for her deductions, Sarah estimated her net monthly income from teaching at $3,910.05 for the 2018-2019 academic year. Nevertheless, one of the financial records shows Sarah's deductions to be $1,119.36 for taxes and $341.71 for teacher retirement systems contributions. With gross monthly income of $6,043.75, Sarah, based on these deductions, would garner $4,582.68 in net monthly wages.

Patrick Ream disagreed with Sarah Ream's calculation of her net monthly income from teaching. Patrick calculated the net wages to be $5,741.32. Patrick emphasized that Sarah's September 2018 pay stub listed her gross monthly income as $6,834.21, not $6,043.75 as contended by Sarah. An unsigned and undated financial declaration of Sarah pegs her gross monthly income at $6,834.21. Another document showed Sarah to earn $6,634.31 in gross monthly wages. Patrick highlighted that Sarah's child support worksheets also indicated that her monthly gross income was $6,834.21. Patrick disputed Sarah's claimed federal tax deduction of $2,356.63 based on her teaching salary and rental income.

Patrick Ream computed Sarah Ream's net monthly income, when adding the rental income with the teaching wages, but excluding spousal maintenance, as $9,120.72.

Sarah Ream paid pretrial attorney fees of $44,354.24 by using her savings and credit cards. At trial, she testified that, after the filing of the marital dissolution petition, she reduced her living expenses, including ending cable television, to meet her postseparation and pretrial income. She formerly paid in full her monthly credit card invoices, but, after separation, she could no longer do so. At the time of trial, three credit cards had balances of around $1,000 each and a fourth credit card carried a balance of $800. She estimated that she would owe an additional $30,000 in attorney fees for trial.

Before trial, Patrick and Sarah Ream owed a 2017 tax obligation of $70,683. Because trial was set for after the tax-filing deadline, the dissolution court ordered that

the couple to pay the debt via a joint account. The trial court reserved the character of the tax debt for trial.

## PROCEDURE

On June 12, 2017, Sarah Ream filed a petition for dissolution of marriage. On November 5, 2018, the petition proceeded to trial.

At trial, Patrick and Sarah Ream presented expert testimony to calculate the percentage of the first half of the BMO commission that should be deemed community property, since Patrick obtained the first payment postseparation. Patrick requested the application of the time rule to the first half of the BMO commission. Patrick 's expert witness, Scott Martin, a certified public accountant, characterized the time rule formula, utilized in *In re Marriage of Short*, 125 Wn.2d 865, 872, 890 P.2d 12 (1995), as a formula for allocating stock options according to the employment services performed prior to and after the date the parties lived separate and apart. Martin characterized 75.19 percent of the first half of the BMO commission as community property and 24.08 percent of the payment as Patrick's separate property. Sarah's expert witness, Todd Carlson, agreed to this percentage as complying with the time rule.

During trial, Patrick Ream argued that the second half of the BMO commission should not be characterized as property distributed between the parties because he possessed no enforceable right to the commission at the time of trial. He lacked any entitlement to the second half of the commission because he could die, he could cease

working for FISERV, BMO could be acquired, or the contract with BMO could terminate before FISERV owed the compensation. Patrick further argued that, assuming the dissolution court deemed the second half of the income to be a distributable asset, the commission was entirely his separate property, because he performed all of the labor necessary to earn the second payment after he and Sarah separated. This labor included oversight of the installation of the software.

Despite Patrick Ream's legal contention, his expert, Scott Martin, conceded that Patrick would likely receive the second half commission. The value of the second BMO commission installment totaled $316,557.

During trial, Patrick Ream, despite the court's previous order reserving the character determination of the parties' 2017 tax liability, contended that, because the couple already satisfied their tax obligation by paying the IRS, the trial court did not need to decide whether the payment retired a community or separate debt. Thus, he argued that the trial court should not consider the payment when distributing the couple's property.

The dissolution court determined Sarah Ream's net monthly income, for purposes of child support and spousal maintenance, to be $6,540. This figure included the spousal maintenance of $2,500 per month that the court ultimately awarded Sarah. Thus, the dissolution court concluded that Sarah garnered net income from teaching and rentals as $4,040 each month.

The dissolution court totaled Patrick Ream's gross monthly income at $29,000 and net monthly income at $21,750. The court did not disclose its computation of either Sarah's or Patrick's net monthly income other than to comment that it performed its own calculation based on the parties' financial declarations rather than accept either parties' calculation.

The trial court awarded Sarah Ream two years' spousal maintenance at $2,500 per month. In so ruling, the dissolution court considered the factors listed in RCW 26.09.090(1). The court, in its oral ruling, commented:

> The Court was mindful of the factors contained in 26.09.090 regarding maintenance. I reviewed all those factors. The Court has certainly considered the financial resource of the party seeking maintenance including any separate property. I also included and certainly considered the time necessary to acquire sufficient education and training. Sounds like you're [Sarah Ream is] off on your next career and that you have a healthy career ahead of you as a teacher. The Court heavily considered the standard of living established during the marriage and is mindful going forward that there would be some disparity there, and the Court doesn't want to create a major discrepancy between the households. The Court also took into account the length of the marriage, the fact this was a 16-year marriage which is a healthy substantial, intermediate marriage. The Court also considered your age, your physical/emotional conditions, and your financial, and the financial obligations of yourself, the petitioner, and the Court certainly considered Mr. Ream's ability to pay.
>
> I'm ordering maintenance in the amount of $2,500 for a period of two years going forward. That number is reflected in the net income that I've made for purposes of child support. I believe that that will take care of the needs, and I believe that given the resources and the money that has been provided to you in this decision that will take care of your needs adequately and the needs of your children.

RP at 842-43.

8

In a finding of fact, the dissolution court wrote, in part:

The court finds this is a long-intermediate marriage. During the 16-year marriage, the parties each substantially relied on the marital community. Petitioner [Sarah Ream] altered her career path to raise a family. Petitioner's alteration of her career path was a joint decision of the parties.

Respondent's career was enhanced by the contribution of the Petitioner as the primary caregiver.

. . . .

The court considered the factors contained in RCW 26.09.090 regarding maintenance. The court considered the financial resources of the party seeking maintenance including any separate property. The court considered the time necessary to acquire sufficient education and training. The court heavily considered the standard of living established during the marriage and the disparity in the standard of living post-dissolution. The court took into account the length of the marriage, a healthy, substantial intermediate marriage. The court considered the age, physical/emotional conditions, financial condition, and financial obligations of both the Petitioner and the Respondent.

. . . .

Conclusion: Spousal support should be ordered based upon the Petitioner's financial resources, Petitioner's age and physical and emotional condition, Respondent's significant earning capacity, Respondent's ability to meet his needs and obligations, and the standard of living during the marriage.

Clerk's Papers (CP) at 178.

In finding of fact 1.22, the trial court declined to apply the time rule formula,

utilized in *In re Marriage of Short*, when adjudging the character of both installments of

the BMO commission as either community property or separate property. The

dissolution court explained:

The Court reviewed *In Re Marriage of Short*. After review of lay and expert testimony and the case precedent the court declined to apply the

9

> *Short* analysis, finding the facts at issue in this case distinguished from those in *Short*. In reviewing the facts at hand in relation to *Short*, the court looked to the nature of the transaction between FISERV and the client. Unlike the stocks in *Short*, the court found the facts clearly established the construct of apportioning two separate commissions overtime was to ensure that the client [BMO] received the bargained for product (as distinguished from the line of thought in *Short* which concerned stock options that were purely for the purpose of employee retention).

CP at 172. The court characterized each installment of the BMO commission as fifty-percent community, because the labor expended in earning each half of the commission was "predominantly done during marriage." CP at 172.

The dissolution court analyzed the characterization of the parties' 2017 tax obligation, which the court earlier reserved for trial. Presumably the payment came from a bank account, whose deposits constituted community property. Of the $70,683 tax bill, the court concluded that Sarah Ream should be responsible for $10,000 and Patrick Ream $60,683 of the amount. Accordingly, the trial court ordered that Patrick reimburse Sarah $50,683.

The dissolution court disproportionately divided the parties' assets in favor of Sarah Ream. When declaring that the division was just and equitable, the court added that "'[e]ven if the court erred on any characterization, such misclassification would not have affected [the court's] final distribution decision.'" RP at 926. The court reasoned:

> The parties substantially relied on the marital community. During the marriage, the Respondent earned a lucrative professional career with the assistance and professional sacrifice of the Petitioner. Respondent has an

10

enormous earning potential and there has been a lifestyle throughout
marriage to which Petitioner contributed.

CP at 177.

The dissolution court awarded Sarah Ream assets valued at $1,812,024.11 and

Patrick Ream assets valued at $1,595,417.73.  The court, per the parties' stipulation,

awarded Patrick the 14th Avenue property and Sarah the 45th Avenue property and the

remaining four rental properties.  Sarah received more than half of her assets in real

property.  The trial court imposed $117,239.01 and $339,752.91 in liabilities respectively

on Sarah and Patrick.

Finally, the dissolution court awarded Sarah Ream $50,000 in attorney fees, based

on the financial needs of Sarah and the ability of Patrick Ream to pay.  When awarding

this sum, the dissolution court relied on "the nature and extent of discovery requests,

supplemental requests, efforts of counsel, and work performed by experts."  CP at 175.

After entry of the dissolution decree, Sarah Ream filed a motion to enforce the

decree.  The dissolution court thereafter amended its final ruling, thereby increasing

Sarah's award.  In its February 18, 2020 ruling, the trial court stated:

> The court previously found and *continues to find this is [a] fair just
> and equitable distribution* as it gives security to the petitioner and serves as
> a guarantee of value to the Petitioner who has far less earning capacity than
> that of Respondent.

CP at 246 (emphasis added).

11

LAW AND ANALYSIS

Patrick Ream assigns error to the dissolution court's calculation of Sarah Ream's net monthly income, the amount of spousal maintenance awarded Sarah, the finding that the second half of the BMO commission was property to be divided, the ruling characterizing half of each half of the BMO commission to be community property, the equity of the property division, and the attorney fee award of $50,000 to Sarah Ream. Patrick Ream assigns no error to the amount of child support ordered.

Calculation of Sarah Ream's Income

When challenging the dissolution court's computation of Sarah Ream's net monthly income at $6,540, Patrick Ream contends that the dissolution court failed to identify the evidence on which it relied in making the calculation or its method of calculation. In turn, Patrick contends substantial evidence does not support the court's calculation after considering Sarah's teaching income, spousal support, rental housing income, and eligible deductions.

Patrick Ream cites RCW 26.19.071, the lengthy statute that lists the forms of income that the dissolution court totals when calculating income for purposes of child support. The statute does not indicate that it also controls income included or excluded when assessing a spouse's income for purposes of spousal maintenance. Nevertheless, both parties assume that the statute controls any award of maintenance. RCW 26.19.071(3) directs the court to include salaries, wages, commissions, rents, and

maintenance actually received. Patrick does not assign error to the dissolution court's imposition of child support despite the calculation of Sarah's income being a factor in assessing the amount of support.

Both parties presented the dissolution court disparate calculations of Sarah Ream's income. Sarah testified she garnered net monthly housing rental income of $1,000 and net monthly income from teaching of $3,910.05, for a total of $4,910.05. Patrick Ream testified and presented exhibits supporting a conclusion that Sarah's monthly income, excluding spousal maintenance, amounted to be $9,120.72. This figure included $5,741.32 in teaching salary and $3,379.40 in housing rental. Patrick's calculation appears more comprehensive and accurate, but our role is not one of finder of fact.

The dissolution court determined Sarah Ream's net monthly income, for purposes of child support and spousal maintenance, to be $6,540. This figure included the spousal maintenance that the court ultimately awarded Sarah of $2,500 per month. Thus, the income from housing rentals and teaching, according to the trial court, amounted only to $4,040. This figure deceeds the amount Sarah claimed she earned by $870. The trial court did not disclose how it arrived at its figure. The court, however, observed that it performed its own calculation based on the parties' financial declarations rather than accept either parties' calculation.

This court reviews factual findings for substantial evidence. *In re Marriage of Stachofsky*, 90 Wn. App. 135, 144, 951 P.2d 346 (1998). In determining whether

13

substantial evidence exists to support a court's finding of fact, the record is reviewed in the light most favorable to the party in whose favor the findings were entered. *In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997). We rely on the principle that findings of fact are supported by substantial evidence if, from the evidence preserved in the record, the reviewing court can discern a rational premise for those findings. *In re Worker's Compensation Claim of Morris*, 403 P.3d 980, 986 (Wyo. 2017).

Sarah Ream argues that the trial court was within its authority to discount the alleged rental income to near zero or discount her teaching income given the absence of a contract. Discounting Sarah's teaching income somewhat may be justified, given that she lacked a contract. Nevertheless, even when considering the risks and expenses associated with the rental properties, discounting Sarah's rental income to near zero is unreasonable. More importantly, from the record we cannot determine if the trial court decided to discount rental income, teaching wages, or both.

Because the trial court failed to explain how it determined Sarah Ream's net monthly income and because the trial court's calculation is even lower than the calculation of Sarah, we are unable to determine if substantial evidence supports the trial court's finding. Therefore, we remand to the trial court to enter findings supporting its computation of Sarah's income or to perform a new calculation.

14

Spousal Maintenance

On appeal, Patrick Ream challenges the dissolution court's award of spousal maintenance to his former wife. He contends Sarah Ream lacks financial need for any support. Patrick highlights Sarah's net monthly income and her significant distribution of over $1.8 million in assets. Sarah responds that Patrick mistakenly focuses only on her financial need when need is only one factor the trial court must consider before awarding maintenance. Sarah maintains that her sacrifice of her career to support the parties' home and children, Patrick's high earning potential, the parties' lavish lifestyle during marriage, and the length of the parties' marriage justified her maintenance award.

We decline to address whether the trial court abused its wide discretion when awarding spousal maintenance. Because we remand to the trial court to explain its computation of Sarah Ream's income or to recalculate the income and because Sarah's income serves as an important factor in assessing spousal maintenance, we also remand for the dissolution court to consider anew the award of spousal maintenance. The court may entertain the parties' arguments and impose a new or same amount of spousal maintenance after reassessing Sarah's amount of income.

Unpreserved Challenge to Finding 1.22

On appeal, Patrick Ream challenges the dissolution court's finding of fact 1.22. Sarah Ream argues that Patrick failed to challenge the trial court's finding 1.22, and thus the finding becomes a verity on appeal. Patrick's challenge relates to the characterization

of the first half of the BMO commission. We question the importance of the finding of fact to our decision, but address the challenge and Sarah's objection to the challenge anyway.

Most of finding of fact 1.22 constitutes conclusions of law or a skiff of legal analysis. That portion of the finding that pertains to facts reads:

> Unlike the stocks in *Short*, the court found the facts clearly established the construct of apportioning two separate commissions overtime was to ensure that the client [BMO] received the bargained for product (as distinguished from the line of thought in *Short* which concerned stock options that were purely for the purpose of employee retention).

CP at 172. The dissolution court discerned the reason behind FISERV splitting sales commissions in half and then employed this reason to apportion the commission between separate property and community property. Sarah Ream may wish to preclude Patrick Ream from challenging the apportionment of the BMO commission by her claiming that this finding of fact, that underlies the dissolution court's apportionment ruling, is a verity on appeal.

RAP 10.3(g) requires separate assignments of error for each challenged finding and further requires that each assignment include reference to the finding by number. RAP 10.4(c) requires a party to quote the material portions of the challenged finding in its brief or an appendix thereto. Patrick Ream did not include a separate assignment of error to finding of fact 1.22 in his opening brief, let alone expressly assign error to the finding of fact as part of another assignment of error. Nevertheless, in his opening brief,

16

in parentheses next to assignment of error 2, he wrote "CP 172 at sections 1.22." Br. of Appellant at i. Finding of fact 1.22 is found on CP at 172.

In response to Sarah Ream's contention that Patrick Ream failed to preserve his assignment of error to finding of fact 1.22, Patrick emphasizes that his opening brief disputed the finding. As a precaution, Patrick listed two additional assignments of error in his reply brief:

> A. The trial court erred in finding that most of the work that went into securing the payment of first and second BMO commissions was for past or present services, (". . . occurred during the marital community. . ." <u>RP 833</u>.
> B. The trial court erred in finding that the purpose of paying the BMO commissions in two installments was to ensure that the client receives what it bargained for. <u>RP 833</u>.

Reply Br. of Appellant at 3.

This court need not strictly follow RAP 10.3(g) and 10.4(c). RAP 1.2 declares:

> These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

In *In re Marriage of Stern*, 57 Wn. App. 707, 710, 789 P.2d 807 (1990), the appellant forgot to quote a challenged finding of fact, but he cured this defect in his reply brief. In its discretion, this court proceeded to address the merits of the appeal and deemed sanctions inappropriate. The court could still expeditiously review the challenge to the

finding, and the respondent suffered no prejudice by the failure to cite the challenged

finding in the opening brief.

Because Patrick Ream referenced the challenged finding of fact in his assignments

of error in his opening brief, because Patrick specifically assigned error to finding of fact

1.22 in his reply brief, because this court is not hampered by the lack of strict compliance

with RAP 10.3(g) and 10.4(c), and because Sarah Ream suffers no prejudice by any

violation of the rules, we proceed as if Patrick Ream properly preserved error in his

appeal brief.

First Half BMO Commission

Patrick Ream argues that the trial court erred by failing to apply the time rule

formula, utilized in *In re Marriage of Short*, 125 Wn.2d 865 (1995), when the trial court

characterized the first half of his BMO commission as fifty percent community property.

Patrick asserts that, if the trial court applied the formula, the first half of the commission

would have been subject to a significantly smaller community apportionment, resulting in

more of the commission's proceeds being Patrick Ream's separate property. He argues

that, given the similarities between commissions, bonuses, and stocks, the time rule

should apply to commissions. *Marriage of Short* dealt with stock options given the

husband as part of his remuneration for employment.

At the time of dissolution, all property comes before the court for a "just and

equitable" distribution. RCW 26.09.080; *In re Marriage of Farmer*, 172 Wn.2d 616,

18

625, 259 P.3d 256 (2011).  Before distributing property, a trial court must characterize each piece of property as either community or separate or allocate a percentage of the asset that constitutes separate property and community property.  *In re Marriage of Gillespie*, 89 Wn. App. 390, 399 (1997).  Separate property is acquired either before or after marriage by gift, bequest, devise or descent.  RCW 26.16.010; *In re Marriage of Short*, 125 Wn.2d 865, 870-71 (1995).  Separate property includes a spouse's earnings "while living separate and apart."  *In re Marriage of Short*, 125 Wn.2d at 871.

On appeal, Patrick Ream does not seek remand for recharacterization of the first BMO payment.  Patrick also does not indicate what percentage of the first half of the BMO commission should be separate versus community property.  Patrick, however, admits that some of the payment should be community property.

We decline to address Patrick Ream's request to apply the time rule to the first BMO payment because Patrick fails to specify the increase in percentage of his separate property share that he seeks.  Nor does he request a remand for the dissolution court to reallocate the percentage.  This court will not entertain an assignment of error that lacks any practical effect on the outcome of the appeal.  *Daines v. Spokane County*, 111 Wn. App. 342, 350, 44 P.3d 909 (2002), *overruled on other grounds by Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 261 P.3d 119 (2011).

We also observe that the dissolution court's characterization of the first BMO payment as only fifty percent community property benefitted Patrick Ream, because both

19

parties' experts agreed that seventy-five percent of the payment should be deemed community property. A party should not be heard complaining that the dissolution court issued a ruling more favorable to the party than the party's expert opinion. Presenting expert testimony that benefits the party less than the trial court's ruling is akin to invited error.

Second Half BMO Commission as Distributable Asset

Patrick Ream next argues that the trial court improperly distributed the second half of the BMO commission because the payment did not constitute property and was not a distributable asset. Patrick emphasizes that he had not earned the second half of the BMO commission by trial. He characterizes his interest in the second BMO installment as merely an expectancy at trial and not an asset to be distributed. Sarah Ream responds that, because there was little to no threat of the second BMO commission installment not being paid to Patrick, the payment was properly before the court for distribution. Sarah maintains that Patrick performed services before or at the time of the parties' separation that led to the right to receive the second half.

At the time of dissolution, the dissolution court shall dispose of "the property" of the parties. RCW 26.09.080. Under the statute, "all property" comes before the court for a "'just and equitable'" distribution. *In re Marriage of Farmer*, 172 Wn.2d 616, 625 (2011).

RCW 26.09.080 does not define the term "property."  For purposes of Washington dissolution actions, property can be tangible or intangible, but it must be something to which there is a right.  *In re Marriage of Harrington*, 85 Wn. App. 613, 624, 935 P.2d 1357 (1997).  On the one hand, a mere expectancy is not a right and as such is not property.  *In re Marriage of Harrington*, 85 Wn. App. 613, 624.  On the other hand, "property" is a term of broad significance, embracing everything that has exchangeable value and every interest or estate which the law regards of sufficient value for judicial recognition.  *York v. Stone*, 178 Wash. 280, 285, 34 P.2d 911 (1934); *In re Marriage of Harrington*, 85 Wn. App. at 624.  An enforceable contract right is property.  *Freeburn v. Freeburn*, 107 Wash. 646, 650, 182 P. 620 (1919); *In re Marriage of Estes*, 84 Wn. App. 586, 590, 929 P.2d 500 (1997).  A contingent future interest is also property.  *In re Marriage of Estes*, 84 Wn. App. 586, 590 (1997); *In re Marriage of Leland*, 69 Wn. App. 57, 71, 847 P.2d 518 (1993).  The proceeds of a contract obtained during the marriage in the conduct of the community's business may be awarded to both parties and divided between them when received.  *Freeburn v. Freeburn*, 107 Wash. 646, 650 (1919); *In re Marriage of Estes*, 84 Wn. App. at 590-91.

We deem *Marriage of Estes*, 84 Wn. App. 586 (1997) persuasive, if not controlling.  The divorcing husband was an attorney who garnered some of his income from contingency fees.  At the time of separation, the husband had pending five contingent fee cases.  At trial, the husband argued that the contingency fee cases lacked

21

any value because of the uncertainty of the outcome of any case. The trial court agreed

with the husband and awarded him any income that would accrue in the future from the

cases.

This court, in *Marriage of Estes*, reversed the trial court. The court reasoned that

any difficulty in valuation did not prevent dividing property. The husband signed the

contracts for the contingency fees before the separation. The husband possessed a right

to enforce the contract on the fulfillment of conditions. The trial court could rule that the

fees be divided on collection.

Patrick Ream possessed a right to payment of the second half of the commission

on the condition that the FISERV software operated within BMO's financial system. The

possibility that those conditions might not be fulfilled does not preclude the dissolution

court from dividing the commission as marital property. The chances of the absence of

the contingencies fulfilled were slim, so valuation of the right to the commission would

not be difficult. The dissolution court did not err when deeming the second half of the

commission an asset to be distributed.

Allocation of Second Half of BMO Commission

On the contingency that this court affirms the dissolution court's characterization

of the commission's second half, Patrick Ream contends that the entirety of the second

commission payment must be deemed his separate property. He bases this argument on

the false assumption that he earned the second half remuneration solely from his post-

separation efforts. The record does not reflect this claimed fact. Although Patrick assisted in the installation of the FISERV software into BMO's operations after the separation, his agreement with FISERV did not state that payment of the second half was contingent on his participation in the installment. Work performed by Patrick before the couple's separation also led to the collection of the remaining half of the commission.

As already mentioned, before dividing the property, the trial court must determine the nature and extent of the community property and the separate property of the parties. RCW 26.09.080(1)-(4); *In re Marriage of Gillespie*, 89 Wn. App. 390, 399 (1997). Assets acquired during marriage are presumptively community property. *In re Marriage of Short*, 125 Wn.2d 865, 870, (1995). A party may rebut the community property presumption by presenting clear and convincing evidence that the disputed property is separate property. *In re Marriage of Chumbley*, 150 Wn.2d 1, 5, 74 P.3d 129 (2003). Separate property is acquired either before or after marriage by gift, bequest, devise or descent. RCW 26.16.010; *In re Marriage of Short*, 125 Wn.2d 865, 870-71 (1995). Separate property includes a spouse's earnings "while living separate and apart." *In re Marriage of Short*, 125 Wn.2d at 871.

Patrick Ream contends that the application of the time rule formula would have resulted in the second half of the commission being characterized entirely as his separate property. In *In re Marriage of Short*, 125 Wn.2d 865, 874 (1995), the Supreme Court adopted the time rule formula to assess what percentage of a stock option constituted

separate property and what percentage constituted community property. The option resulted from the husband's labor before and after the couple's separation.

Patrick Ream limits his argument to the entirety of the second half of the commission being separate property such that the time formula lacks any application. Ream does not contend that, assuming the dissolution court finds some of the second half to be community property, the court allocated an erroneous percentage to the community property.

We reject Patrick Ream's contention. Patrick relies on the assumption that the BMO commission is two, different sets of commissions. FISERV's policies indicate that, when an employee sells FISERV software, they receive a commission after achieving two milestones. The second half of the BMO commission is not a separate commission, but rather one half of the same commission, even though the dissolution court referred once to the existence of two separate commissions. Both halves were earned in part before the separation of the parties. The sale of the FISERV software was a singular sale. The trial court found that both parts of the commission were earned for past, present, and future services.

Prepaid Taxes

By agreed order, the marital couple satisfied its 2017 community tax liability before trial. Patrick Ream assigns error to the trial court's consideration of the community's prepayment of taxes for 2017 as an item of property to be distributed.

Alternatively, he argues that, if the parties' 2017 community prepaid tax liability existed at trial for distribution, the court erred by assigning him ninety percent of the responsibility to pay the tax and Sarah only ten percent. Of the $70,683 liability, the court imposed $10,000 of the responsibility on Sarah and $60,683 on Patrick. Accordingly, the trial court ordered that Patrick reimburse Sarah $50,683.

Sarah Ream responds that, under the agreed order, the trial court reserved the character of the tax liability for trial. Sarah argues that the trial court justly and equitably distributed the parties' 2017 tax liability. In reply, Patrick Ream acknowledges that the pretrial order reserved the community tax debt's characterization for trial, but the order did not reserve a reallocation of payment between the parties. Thus, by ordering redistribution of the tax liability, the community essentially paid the debt twice.

At the time of dissolution, all property is brought before the court for a "'just and equitable'" distribution. RCW 26.09.080; *In re Marriage of Farmer*, 172 Wn.2d 616, 625 (2011). If one or both parties disposed of an asset before trial, the court lacks authority to distribute the asset at trial. *In re Marriage of White*, 105 Wn. App. 545, 549, 20 P.3d 481 (2001).

Patrick Ream cites to *In re Marriage of White* to support the conclusion that assets not before the court may not be distributed. In 1993, Carol White inherited money from her father. Later in 1993, she used $4,000 of her inheritance to retire the debt owed on the family vehicle. In 1994, she used $26,511 of her inheritance to retire the mortgage on

the family home. Carol petitioned for dissolution in 1997. At trial, she requested that the $30,511 she used to pay off the home and car be deemed her separate property. The trial court obliged, reasoning that Carol's inheritance had not become community property.

On appeal in *Marriage of White*, this court held that the trial court erroneously reasoned that Carol White's inheritance was an asset before the court for distribution since the inheritance ceased being property after being spent. This court further held that the trial court should have characterized White's inheritance as community property. Regardless, this court determined that the trial court possessed the discretion to distribute the parties' property in the manner it did. *In re Marriage of White*, 105 Wn. App. at 554. Still this court remanded because it could not discern from the record whether the trial court would have distributed the parties' property differently had the dissolution court properly characterized the inheritance.

Patrick Ream also relies on *In re Marriage of Kaseburg*, 126 Wn. App. 546, 108 P.3d 1278 (2005). The trial court awarded $150,000 to Rochelle Kaseburg for her community interest in her and Kenneth Kaseburg's former family home, despite the lender foreclosing on the home before trial. The trial court justified the award on Kenneth committing fraud, waste, and other financial misconduct. On appeal, this court held that the trial court properly considered Kenneth's fraud and waste of community assets. Nevertheless, this court concluded that the trial court abused its discretion by

26

allowing Rochelle a distribution when considering the home to be before the trial court for distribution.

*In re Marriage of White* is distinguishable. First, while *White* explained that an asset already spent does not exist for distribution at trial, the primary issue was an asset's characterization. Second, *White* did not involve a court-ordered predistribution or a character determination reservation. Finally, the *White* court found the trial court's distribution just and equitable and remanded only for clarification that its distribution would remain unchanged if it had properly characterized Carol White's inheritance. As Sarah Ream underscores, her dissolution court expressed that its award would remain unchanged regardless of any mischaracterizations. *In re Marriage of Kaseburg* is similarly inapposite. The case did not deal with a predistribution order or a reservation of the characterization of an asset or liability for trial.

The trial court specifically ordered the parties to satisfy their 2017 tax liability pretrial. The court expressly reserved the debt's characterization for trial. Accordingly, we hold that the liability was before the trial court for distribution.

Patrick Ream next argues that, because the pretrial order only reserved the character determination, not the payment, of the 2017 community tax liability for trial, the trial court erred by redistributing the asset. Patrick contends that, as the liability had already been satisfied, the trial court essentially required that the community pay the tax liability again. We disagree.

By reserving the debt's characterization for trial, the trial court retained the authority to redistribute the parties' responsibility for the debt. There may have been no purpose of reserving the characterization for trial, if the court did not intend to allocate responsibility for the debt. The trial court did not order that the parties pay the IRS a second time. Rather, it allocated responsibility for the liability between the parties. Furthermore, because a majority of the tax liability stemmed from Patrick Ream's income, the dissolution court's imposing major responsibility on Patrick Ream is logical. Therefore, the trial court did not abuse its discretion by allocating a majority of the responsibility for the 2017 community prepaid tax liability to Patrick Ream.

Property Distribution

Patrick Ream argues that, even if the dissolution court properly characterized the nature of the BMO commission, the court's division of property was not fair.

At the time of dissolution, all property comes before the court for a "'just and equitable'" distribution. RCW 26.09.080; *In re Marriage of Farmer*, 172 Wn.2d 616, 625 (2011). A just and equitable distribution need not be an equal distribution, but rather requires fairness based on a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of the parties. *In re Marriage of Larson*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013). In crafting a just and equitable distribution plan, the trial court shall consider the nonexclusive factors listed in RCW 26.09.080:

28

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

Although the trial court usually awards separate property to its owner, the trial court may award separate property to the other spouse when just and equitable. *In re Marriage of Larson*, 178 Wn. App. 133, 138 (2013). Even if the trial court mischaracterizes the parties' property, this court will not disturb the distribution of the assets if in our judgment that distribution is otherwise fair, just and equitable. *In re Marriage of Brady*, 50 Wn. App. 728, 732, 750 P.2d 654 (1988).

This court will reverse a trial court's property distribution in a marriage dissolution only when the trial court abuses its discretion. *In re Marriage of Zier*, 136 Wn. App. 40, 45, 147 P.3d 624 (2006). A trial court abuses its discretion when it exercises it on untenable grounds or in an unreasonable manner, "namely, when the court 'relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law.'" *Kelley v. Centennial Contractors Enterprises, Inc.*, 169 Wn.2d 381, 386, 236 P.3d 197 (2010). A trial court's characterization of property is a question of law. *In re Marriage of Skarbek*,

100 Wn. App. 444, 447, 997 P.2d 447 (2000). This court reviews questions of law de novo. *In re Marriage of Herridge*, 169 Wn. App. 290, 297, 279 P.3d 956 (2012).

The dissolution court awarded Sarah Ream assets valued at $1,812,024.11 and Patrick Ream assets valued at $1,595,417.73. Sarah Ream thereby received 53 percent of the assets, and Patrick Ream received 47 percent of the property. The dissolution court did not abuse its discretion, when considering the nature of the property, the length of the marriage, and the needs of the spouses, awarding a near equal allocation of the property.

Additionally, Patrick Ream challenges the trial court's posttrial ruling on Sarah Ream's motion to enforce the court's distribution decree. On February 18, 2020, the trial court amended its final ruling, resulting in a higher award to Sarah. Patrick Ream argues that the trial court failed to reiterate that its revised distribution was fair and equitable.

Patrick Ream's argument is incorrect. In its February 18, 2020 ruling, the trial court stated:

> The court previously found and *continues to find this is [a] fair just and equitable distribution* as it gives security to the petitioner and serves as a guarantee of value to the Petitioner who has far less earning capacity than that of Respondent.

CP at 246 (emphasis added).

### Attorney Fees at Dissolution Court

Patrick Ream contends that the dissolution court erred by awarding Sarah Ream any attorney fees for legal assistance before the superior court, since Sarah received a

majority of the parties' assets and possessed the financial ability to pay her fees. He

further challenges the $50,000 sum awarded as unreasonable and highlights the trial court

failed to make any findings confirming the award's reasonableness. Sarah responds that

the dissolution court properly awarded attorney fees, even after Patrick received less of

the community assets and the court ordered him to pay maintenance, because of Patrick's

high earnings.

RCW 26.09.140 authorizes the trial court to award attorney fees in dissolution

actions. The first sentence of the statute declares:

> The court from time to time after considering the financial resources
> of both parties may order a party to pay a reasonable amount for the cost to
> the other party of maintaining or defending any proceeding under this
> chapter and for reasonable attorneys' fees or other professional fees in
> connection therewith, including sums for legal services rendered and costs
> incurred prior to the commencement of the proceeding or enforcement or
> modification proceedings after entry of judgment.

Before awarding attorney fees, the trial court must balance the needs of the spouse

requesting them with the ability of the other spouse to pay. *In re Marriage of Morrow*,

53 Wn. App. 579, 590, 770 P.2d 197 (1989). The statute suggests the financial resources

of the parties are the only factors for the dissolution court to consider.

A spouse's receipt of substantial property or maintenance does not preclude the

spouse from also receiving an award of attorney fees and costs when the other spouse

remains in a much better position to pay. *In re Marriage of Morrow*, 53 Wn. App. 579,

590 (1989). Nevertheless, reviewing courts have declared awards of fees an abuse of

discretion when the benefitted spouse received a majority of the parties' total assets, the same spouse has a better financial situation, and the other spouse already has an onerous financial burden. *In re Marriage of Nicholson*, 17 Wn. App. 110, 120, 561 P.2d 1116 (1977).

Sarah Ream paid her pretrial attorney fees, in the amount of $44,354.24, by using her savings and credit cards. While Sarah attempts to pay her credit cards on time, after the separation, she could not retire the debt in full every month. At the time of trial, she had balances on her credit cards totaling $3,800. She incurred an additional $30,000 in attorney fees for trial.

The trial court awarded Sarah Ream $1,812,024.11 of the assets and $117,239.01 of the liabilities and Patrick Ream $1,595,417.73 of the assets and $339,752.91 of the liabilities. Thus, Sarah Ream $439,121.01 more net assets than Patrick Ream. Nevertheless, a majority of the value of Sarah's awarded assets was real property, an asset difficult to liquidate and an asset the parties purchased for income. The trial court also awarded Sarah two years' spousal maintenance at $2,500 per month.

Patrick Ream relies on *In re Marriage of Nicholson*, 17 Wn. App. 110, 120 (1977), in which this court reversed the dissolution court's award of reasonable attorney fees and costs to the wife. Gwendoline Nicholson received more than half of the parties' property and cash assets and the record established that she had the ability to pay her attorney fees.

We find *Nicholson* distinguishable. As the court, in *In re Marriage of Morrow*, 53 Wn. App. 579 (1989), observed, a court abuses its discretion when awarding attorney fees if the paying spouse already has an onerous financial burden. In *Nicholson*, the husband, John Nicholson, earned a net monthly income of $1,116, while Gwendoline Nicholson earned $187 per month. The trial court ordered John to pay Gwendoline $400 per month in spousal maintenance for ten years, as well as $175 per month in child support. Thus, John would pay more than half of his net monthly income in support.

Patrick Ream's net monthly income is $21,750. He is ordered to provide Sarah Ream two years' spousal maintenance at $2,500 per month, less than twelve percent of his net income. Even pursuant to Patrick's calculation of Sarah's net monthly income, $9,120.72, Patrick earns significantly more money than Sarah. Thus, unlike John Nicholson, Patrick suffers no onerous financial burden by being compelled to pay Sarah's fees.

Patrick Ream next asserts that the trial court's attorney fee award to Sarah Ream was unreasonable, and that the court should have used the lodestar method in calculating its award. If a court grants attorney fees under RCW 26.09.140, the court must state on the record the method used to calculate the award. *In re Marriage of Obaidi*, 154 Wn. App. 609, 617, 226 P.3d 787 (2010). This court, in *In re Marriage of Van Camp*, 82 Wn. App. 339, 340, 918 P.2d 509 (1996), held that the lodestar method is not required to calculate attorney fees in dissolution actions.

In *In re Marriage of Obaidi*, 154 Wn. App. 609, 618 (2010), the trial court

awarded the wife, Husna Obaidi, attorney fees, stating:

> Now as to the issue of attorneys' fees—clearly the wife has a need; clearly the husband has an ability to pay. I hereby order that he pay her $8,500—flat fee—toward her costs and fees. She has the ability to pay some, she makes about $15,000 a year; he makes about a hundred grand a year. It doesn't take rocket scientists to figure out where I'm coming from on the proration there.

On appeal, the husband, Khalid Qayoum, argued that the trial court erred by failing to

state any method used to calculate the attorney fees. This court held: "[a]lthough the trial

court's method is not completely transparent, we cannot say that the court abused its

discretion in setting attorney fees." *In re Marriage of Obaidi*, 154 Wn. App. at 618.

Patrick Ream's dissolution court awarded Sarah Ream $50,000 of her attorney

fees. This amount is lower than the fees Sarah incurred. Contrary to Patrick's argument,

the trial court entered a reasonableness finding. The trial court commented that the

important evidence included "the nature and extent of discovery requests, supplemental

requests, efforts of counsel, and work performed by experts." CP at 175. The trial

court's findings sufficiently confirm the reasonableness of the award.

### Attorney Fees on Appeal

Sarah Ream requests an award of reasonable attorney fees on appeal pursuant to

RCW 26.09.140, for the same reasons she received her attorney fee award at trial. The

second sentence of RCW 26.09.140 authorizes this court to award attorney fees on appeal:

> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

"Determining whether a fee award is appropriate requires the court to consider the parties' relative ability to pay. The court should also examine the arguable merit of the issues raised on appeal." *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998) (internal citation omitted).

Some of Patrick Ream's assignments of error hold merit, while others did not. More importantly, based on his high income, Patrick Ream remains in a significantly better financial position than Sarah Ream to pay current expenses. Thus, we grant Sarah Ream's request for attorney fees on appeal.

CONCLUSIONS

We remand this marital dissolution proceeding to the superior court for the identification of the method of calculating net income of Sarah Ream or for a recalculation of the income. In turn, we direct the dissolution court to review again the amount of spousal maintenance based on the parties' respective incomes. Otherwise, we affirm the dissolution court's rulings. We award Sarah reasonable attorney fees and costs on appeal.

No. 36900-5-III
*In re Marriage of Ream*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____            _____
Pennell, C.J.                                              Staab, J.